UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                  :

KADIAN MCBEAN, et al., individually and  :
on behalf of a class of all others similarly  :
situated,  :
                   Plaintiffs,  :
  :
       -against-  :
  :
THE CITY OF NEW YORK, et al.,  :
             Defendants.  :
  :     02 Civ. 5426 (GEL)
-------------------------------------------------------------x

**OPINION AND ORDER**

JOEL RAMOS, et al., individually and on  :
behalf of all others similarly situated,  :
          Intervenor-Plaintiffs,  :
  :
       -against-  :
  :
THE CITY OF NEW YORK, et al.,  :
             Defendants.  :
  :
-------------------------------------------------------------x

Richard D. Emery, Matthew D. Brinckerhoff,
Marian Meier Wang, Elizabeth S. Saylor, Emery,
Celli, Brinckerhoff & Abady LLP, New York,
New York, for Intervenor-Plaintiffs.

Michael A. Cardozo, Corporation Counsel of the
City of New York (by Genevieve Nelson, Assistant
Corporation Counsel), New York, New York,
for Defendants.

GERARD E. LYNCH, District Judge:

      Intervenor-plaintiffs Foster Thomas, Daniel Velazquez, Kenneth Williams, Arthur

Wallace, Julio Phitts, Chareama Bolds, and David Sanchez ("plaintiffs") and defendant City of

New York and its Department of Correction ("DOC" or "Department") have submitted a

proposed Stipulation and Order setting forth the parties' agreement with respect to certain facts

and issues that originally were to be addressed at a hearing before the Court.  For the reasons

stated below, the Stipulation and Order is preliminarily approved, subject to further

consideration at a fairness hearing to be held at a later date.

## BACKGROUND

In Shain v. Ellison, the Court of Appeals for the Second Circuit held that it had been

"clearly established" law since 1995 that it is unconstitutional for jail officials to strip search

pre-trial detainees who had been arraigned on misdemeanor or lesser charges, absent a

reasonable suspicion to believe that they were concealing contraband based on individualized

circumstances.  273 F.3d 56, 66 (2d Cir. 2001).  Despite this established constitutional law, DOC

policy at the time of the Shain decision in October 2001 called for strip searches of such

detainees.  Rather than correct its policies, however, in response to the clear holding of Shain

(which involved the Nassau County jails rather than a DOC facility), DOC persisted in a blanket

policy of strip-searching misdemeanor detainees.  On July 15, 2002, this action was filed by a

group of plaintiffs seeking injunctive relief and damages on behalf of a class of misdemeanor

detainees.

Approximately one week after the lawsuit was filed, DOC for the first time issued a

directive, Operations Order 08/02 ("08/02 directive") (P. Ex. 11), purporting to change its policy

and abandon the practice of strip-searching misdemeanor detainees.  Eventually, DOC settled the

lawsuit, agreeing to pay damages to misdemeanor detainees not charged with weapons or drug

violations who had been unconstitutionally strip-searched between July 15, 1999, and July 22,

2002.  (P. Ex. 119 ¶ 12.)  DOC resisted injunctive relief, however, contesting the plaintiffs'

2

motion for a preliminary injunction on the ground that such relief was unnecessary because DOC had, albeit belatedly, voluntarily moved toward compliance with constitutional requirements by adopting the sweeping corrective procedures embodied in the 08/02 directive.  (See 12/9/02 Hr'g Tr. 12:20-25 ("[The 08/02 directive] is a departmental-wide institutional change that was made and there's no . . . evidence whatsoever to suggest that the department would, once this lawsuit is over, change back to any previous policy that it may not be in conformance with the Second Circuit's mandates."); id. at 14:21-24 ("We don't believe based on the documents we've submitted that there's any basis to believe that the department would [revert] back to any practices which would be considered improper.")).

Perhaps naively, but believing that the letter and spirit of the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626 et seq., and principles of judicial restraint, cautioned against intrusive court supervision of executive branch officials unless judicial intervention was absolutely necessary to secure compliance with the Constitution, the Court accepted DOC's representations that, whatever its past derelictions, there would be no future violations.  (See 12/18/02 Hr'g Tr. 24:18-26:8.)  Accordingly, the Court denied plaintiffs' motion.  (Id. at 30.)

The current plaintiffs intervened in the lawsuit and unsuccessfully contested the settlement on various grounds, including on their claim that misdemeanor detainees charged with drug and weapons offenses were also entitled to relief.  That and other claims have subsequently been pursued through a lengthy discovery process.  In recent weeks, the Court has prepared for a hearing that would resolve a number of issues in the on-going litigation, including whether a preliminary injunction should now be granted because, as plaintiffs contended, the 08/02 directive had, in fact, never been implemented, and for the five years since the directive

supposedly ended the practice — even after DOC had settled this action with the original class of plaintiffs by agreeing to pay substantial damages in the past — DOC had continued with a de facto strip search policy by which virtually all misdemeanor detainees continued to be strip-searched, usually in groups, in a humiliating and unconstitutional fashion.  In preparation for the hearing, the Court reviewed the parties' extensive submissions, including the testimony of numerous detainee witnesses and DOC officials, and extensive documentation that, according to plaintiffs, overwhelmingly established that, far from reforming itself and obviating the need for judicial relief, DOC had continued to violate the Constitution and its own official procedures on a routine basis.

On the first day of the scheduled hearing, the parties announced to the Court that they believed the issues that the hearing had been called to address could be settled.  After more than three days of intensive negotiations, some involving the Court as mediator (which apparently followed extensive discussions between the parties before they appeared in court), the parties have arrived at a settlement, in the form of a stipulation of facts and preliminary injunctive relief that the parties have jointly proposed that the Court enter.

## DISCUSSION

The Court has independently reviewed both the factual recitations in the stipulation and the provisions of the proposed injunction.  While it is not the province of the Court to make detailed findings on matters not contested by the parties, the Court has concluded that the evidence in the extensive discovery record and in the pre-trial submissions presented to the Court in connection with the aborted hearing fully supports the parties' stipulation that misdemeanor detainees "were subjected to a pattern and practice of strip searching upon

4

admission," and that "DOC officers and supervisory personnel" routinely conducted such searches "without making any determination or knowing whether they had been arraigned on a charge under the New York Penal Code that was related to possession or use of a drug and/or weapon," let alone whether there was any other individualized basis for reasonable suspicion (although it may have been the case that at least some individual class members may have been searched based on individualized reasonable suspicion).  (Stipulation and Order 2-3.)  Based on the stipulated facts, moreover, the Court concludes that the requirements of Fed. R. Civ. P. 23(a) and (b) have been satisfied and that certification of the proposed classes is therefore appropriate. See Denney v. Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose — settlement, litigation, or otherwise — a court must ensure that the requirements of Rule 23(a) and (b) have been met.").

Under the PLRA, injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and be the least intrusive means necessary to correct that violation.  See 18 U.S.C. § 3626(a)(1).  Even orders to which defendants consent may not go beyond what is necessary for that purpose.  See Benjamin v. Jacobson, 172 F.3d 144, 150-51 (2d Cir. 1999) (en banc) (noting that PLRA's "need-narrowness-intrusiveness" requirements apply to consent decrees).  This Court takes that obligation seriously.  The injunction proposed by the parties does not merely order DOC to stop performing unconstitutional strip searches, but also includes provisions requiring, among other things, the revision of DOC directives and operating procedures inconsistent with the constitutional requirements and the overriding policy adopted by directive 08/02 (Stipulation and Order 4-5), training of corrections officers in the new procedures (id. at 6-9), posting of signs educating

detainees as to their rights (id. at 10-11), and the appointment of a special master to inspect DOC facilities, assess DOC's compliance with constitutional requirements, and report to the Court regarding the extent of compliance (id. at 9-11).  The parties themselves have considered whether these provisions are consistent with the PLRA, and have expressly agreed with each other and represented to the Court that it is their good faith belief that "the injunction herein conforms to the requirements of the [PLRA], and that the relief herein is narrowly drawn, extends no further than necessary to correct the violation of the federal rights of the class, and is the least intrusive means necessary to correct the violation of their federal rights."  (Id. at 3.)

In determining that the adjunct provisions — including revisions of manuals and procedures, training, and the appointment of a special master — satisfy the "need-narrowness-intrusiveness" requirements of the PLRA, Benjamin, 172 F.3d at 150, the Court has carefully considered the breadth of the finding to which the parties have stipulated and the ample support for that finding in the evidentiary record.  The Court has also been strongly influenced by the history of this litigation, and of DOC's long record of failing to comply with well-established law, including its deflection of what would surely have been a less detailed injunction earlier in this litigation by a promise of reform that proved illusory.  In December 2002, this Court believed that the clarity of the Second Circuit's ruling with respect to long-established constitutional rights, the forceful imposition of that case law on DOC by the filing of this action and its agreement to a costly settlement for violation of those rights, and the adoption of an official policy within DOC directing full compliance (and perhaps even more expansive protections than were strictly required), made it unnecessary to impose a court injunction, backed by contempt sanctions, on the operations of the Department, and that systematic violation

of detainees' rights would cease.  (12/18/02 Hr'g Tr. 24-26.)  That belief proved unfounded. Despite all these reasons to expect compliance with law, change has proven illusory, and the culture of the Department has proven resistant to implementation of announced policy.  The Court therefore reluctantly concludes, as have the parties, including the Department itself, that more detailed requirements to implement the "new" policy, which represents, after all, very *old* constitutional obligations, are strictly necessary and narrowly tailored as the least intrusive means necessary to ensure the federal constitutional rights of detainees.

Finally, while the Court expects and directs, as the parties have agreed, that all of the provisions of the Order will be fully implemented, the heart of the Order is the simple provision that DOC "will not subject [misdemeanor detainees] to a strip search upon admission into DOC custody without reasonable suspicion."  (Stipulation and Order 4, § II, ¶ 1.)  All of the other provisions are adjunct to, and intended to ensure compliance with, this core constitutional command.  The efforts of the Special Master will be focused on determining whether this basic requirement is complied with, and while the Court expects the Special Master to report on DOC's progress in complying with all provisions of the Order, the core of each report shall be an assessment of whether illegal strip searches have stopped.  Similarly, the Court's determination of whether DOC is in substantial compliance with the terms of the Order, and whether any sanctions are appropriate for any failure to comply, will be firmly focused on that simple question.

## CONCLUSION

For the reasons stated above, the parties' Stipulation and Order is preliminarily approved, subject to further consideration at a fairness hearing to be held at a later date at which class members can be heard.


SO ORDERED.

Dated:  New York, New York
       October 5, 2007


                                          GERARD E. LYNCH
                                  United States District Judge