USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: *11-9-10*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KADIAN MCBEAN, et al.,

                        Plaintiffs,

     v.

THE CITY OF NEW YORK, et al.,

                        Defendants.

---

JOEL RAMOS, et al.,

                        Intervenor-Plaintiffs,

     v.

THE CITY OF NEW YORK, et al.,

                        Defendants.

---

**02 Civ. 05426 (JGK)**

**FINAL JUDGMENT**



HONORABLE JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

       It is hereby ORDERED, ADJUDGED, and DECREED that for the reasons set forth in the Order filed October 22, 2010 (Ex. A), that:

       The March 16, 2010 Stipulation of Settlement (hereinafter "Damages Settlement") (Ex. B) is hereby approved;

       The parties shall abide by all the terms of the Damages Settlement and the Court's October 22, 2010 Order;

       Final judgment is hereby entered in accordance with the terms of the Damages Settlement and the Court's October 22, 2010 Order;

       A Settlement Class defined as all pretrial detainees arraigned solely on non-felony

charges:

> (a) who were admitted to DOC custody after arraignment between July 23, 2002 and October 4, 2007 but were not also simultaneously admitted on (i) any felony charges; (ii) a parole violation; (iii) an outstanding warrant for a felony offense; (iv) a violation of felony probation; (v) a City sentence of less than one year; or (vi) who were not already serving a State sentence at the time of their admission ("2002-2007 Subclass"); or

> (b) who were admitted to DOC custody after arraignment between July 15, 1999, and July 22, 2002 on a Drug or Weapon Non-Felony Charge as defined in paragraph 23 of the Damages Settlement, but did not receive a monetary settlement as part of the 2005 Settlement, as defined in paragraph 22 of the Damages Settlement, and were not also simultaneously admitted on (i) any felony charges; (ii) a parole violation; (iii) an outstanding warrant for a felony offense; (iv) a violation of felony probation; (v) a City sentence of less than one year; or (vi) who were not already serving a State sentence at the time of their admission ("1999-2002 Subclass");

is certified.

Notice to the Settlement Class was the best practicable notice under the circumstances and complied with Fed. R. Civ. P. 23(c)(2).  Notice was mailed to members of the Settlement Class at their last known address and notices were widely posted, in accordance with the Court's May 5, 2010 order approving the plan for notifying the Settlement Class;

The City of New York shall make all the payments set forth in the October 22, 2010 Order in accordance with the terms set forth in that Order; and

The Court retains jurisdiction over this action to enforce the terms of the October 22, 2010 Order and the Damages Settlement.

So Ordered, Enter Judgment.
New York, New York
___11/8___, 2010

HON. JOHN G. KOELTL, U.S.D.J.

Judgment entered _____, 2010

2

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KADIAN MCBEAN, et al., | 02 Civ. 05426 (JGK) |
| Plaintiffs, | |
| v. | [Proposed] Order |
| | Approving the March 16, 2010 |
| THE CITY OF NEW YORK, et al., | Stipulation of Settlement |
| Defendants. | |
| JOEL RAMOS, et al., | |
| Intervenor-Plaintiffs, | |
| v. | |
| THE CITY OF NEW YORK, et al., | |
| Defendants. | |

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/10

HONORABLE JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

WHEREAS, the Intervenor-Plaintiffs and Defendant City of New York ("City")

entered into a Stipulation and Order, dated October 4, 2007 (hereinafter "2007 Stipulation"),

which provided for injunctive relief and for the certification of an Injunctive Class pursuant to

Fed. R. Civ. P. 23(b)(2), as well as certification of two damages classes pursuant to Fed. R. Civ.

P. 23(b)(3);

WHEREAS, the District Court preliminarily approved the 2007 Stipulation,

including the certification of these three classes, on October 5, 2007;

WHEREAS, the District Court ordered final approval and certification of the 2007 Stipulation and the Injunctive Class pursuant to Fed. R. Civ. P 23(b)(2) after a fairness hearing on February 5, 2010;

WHEREAS, by an Opinion and Order dated August 14, 2009, the District Court certified another class for the period between July 23, 1999 and July 22, 2002 and appointed Emery Celli Brinckerhoff & Abady LLP as Class Counsel and Arthur Wallace and Daniel Velazquez as class representatives;

WHEREAS, the Intervenor-Plaintiffs and the City entered into a Stipulation of Settlement, dated March 16, 2010 (hereinafter "Damages Settlement") to resolve the remaining claims in the above-referenced matters pending in this Court;

WHEREAS, the District Court preliminarily approved the Damages Settlement after a hearing on March 22, 2010 and appointed Rust Consulting, Inc. as the Administrator;

WHEREAS, on May 5, 2010, the District Court approved the plan for notifying the Settlement Class, as well as the Claim Packet (which included, *inter alia*, a Class Notice and Claim Form) and Summary Notices for posting;

WHEREAS, before the Court is Intervenor-Plaintiffs' September 24, 2010 notice of motion, memorandum of law, and declarations in support of final approval of this settlement;

WHEREAS, also before the Court are the Intervenor-Plaintiffs' and Defendants' oral applications made at the Fairness Hearing on October 12, 2010, wherein Defendants set forth their position that the requirements set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (1974) were satisfied, and both parties discussed the fairness and the adequacy of the settlement, in further support of final approval of this settlement;

2

WHEREAS, the Damages Settlement sets forth the terms and conditions for a

proposed settlement and dismissal of this action;

WHEREAS, the Damages Settlement provides for, *inter alia*, monetary relief for

members of the classes ("Class Members"), which are defined as all pretrial detainees arraigned

solely on non-felony charges:

> (a) who were admitted to DOC custody after arraignment between July 23,
> 2002 and October 4, 2007 but were not also simultaneously admitted on
> (i) any felony charges; (ii) a parole violation; (iii) an outstanding warrant
> for a felony offense; (iv) a violation of felony probation; (v) a City
> sentence of less than one year; or (vi) who were not already serving a State
> sentence at the time of their admission ("2002-2007 Subclass"); or

> (b) who were admitted to DOC custody after arraignment between July 15,
> 1999, and July 22, 2002 on a Drug or Weapon Non-Felony Charge as
> defined in paragraph 23 of the Damages Settlement, but did not receive a
> monetary settlement as part of the 2005 Settlement, as defined in
> paragraph 22 of the Damages Settlement, and were not also
> simultaneously admitted on (i) any felony charges; (ii) a parole violation;
> (iii) an outstanding warrant for a felony offense; (iv) a violation of felony
> probation; (v) a City sentence of less than one year; or (vi) who were not
> already serving a State sentence at the time of their admission ("1999-
> 2002 Subclass");

WHEREAS, the 1999-2002 Subclass set forth above in paragraph (b) is the class

that the District Court certified on August 14, 2009, and the 2002-2007 Subclass set forth above

in paragraph (a) comprises the two damages classes that were part of the 2007 Stipulation that

the District Court preliminarily approved on October 4, 2007;

WHEREAS, the Damages Settlement provides for the creation of a Class Fund in

the amount of $33 Million ($33,000,000);

WHEREAS, the Damages Settlement provides that $29 Million ($29,000,000) of

that Class Fund shall be paid to members of the Settlement Class who timely filed a signed valid

Claim Form, according to the formula set forth in paragraphs 42-43 of the Damages Settlement,

and the amount paid to each valid claimant shall be called the Award Amount. Those claimants

previously paid as part of the June 21, 2005 settlement in this case ("2005 Settlement") shall have that amount subtracted from their Award Amount;

WHEREAS, the Damages Settlement provides that $4 Million ($4,000,000 or "Settlement Costs") of that Class Fund shall be paid to Class Counsel to make the following payments: incentive payments of $8,000 each to the eight class representatives of the Settlement Class (Foster Thomas, Daniel Velazquez, Kenneth Williams, Alan Olson, David Sanchez, Arthur Wallace, Chareama Bolds, and Julio Phitts) as defined in paragraph 3 of the Damages Settlement ("Named Plaintiffs") (total $64,000); payments of $20,000 each to two persons (Chareama Bolds and Doris Edwards) who asserted claims regarding purported forced gynecological exams as defined in paragraph 4 of the Damages Settlement ("GYN Plaintiffs") (total $40,000); all payments to an Administrator to administer the Damages Settlement; and payments to Class Counsel for its own past, present, and future fees and costs in the above-captioned action;

WHEREAS, the Administrator was previously paid $265,000 by the City and is currently due an additional $37,500, for a total of $302,500 for administering the Damages Settlement. Any and all expenses, if any, incurred by the Administrator will be paid by Class Counsel from their own funds;

WHEREAS, Class Counsel seeks expenses of $146,677 and seeks $3,446,823 in attorneys' fees, in addition to the $802,308.12 previously received. All future expenses incurred by Class Counsel will be paid from this amount;

WHEREAS, the Damages Settlement also provides that an amount equal to the Award Amount shall be paid to 18 persons (as identified in paragraph 25 of the Damages Settlement) who alleged that, after October 4, 2007, they were strip searched in violation of the Injunction Settlement ("Post-2007 Persons"). This amount will be paid directly by the City and

4

not from the Class Fund. Those 18 persons are John Able, Michael Booker, Chester Brown, Marquis Copeland, David Cruz, Harold Eggleston, Osvaldo Gomez, Michael Gruich, Naquawn Hallback, Susan Longton, Lacy Love, Saeed Mack, Henry Maxwell, Terrence Medlock, Harold Nance, Tyrone Reynolds, Dennis Ryan, and Yunepha Sumpter;

WHEREAS, the Administrator has averred that it sent a Claim Packet to each Class Member on May 14, 2010 at the last known address(es) (with re-mailing of returned Claim Packets), and Class Members were given until August 12, 2010 to opt-out or object and until September 11, 2010 to file a Claim Form;

WHEREAS, the submissions of the parties indicate that one-page Spanish and one-page English Summary Notices were posted in places likely to be seen by Class Members in accordance with paragraphs 66-72 of the Damages Settlement;

WHEREAS, in March 2010, the Damages Settlement was widely publicized on the radio, television, the internet, and in newspapers;

WHEREAS, the Damages Settlement was negotiated with the assistance of the court-appointed Special Master Richard J. Davis, a partner at Weil, Gotshal & Manges LLP, who informed the Court that the Damages Settlement was the product of serious, informed, non-collusive negotiations, did not improperly grant preferential treatment to class representatives or segments of the class, and is fair, reasonable, and adequate;

WHEREAS, a hearing to preliminarily determine whether the Damages Settlement was fair, just, and reasonable was held on October 12, 2010; and

WHEREAS, upon reading the papers submitted in support of the motion for approval of the Damages Settlement, and after hearing argument from both parties and members of the Settlement Class;

NOW, it is HEREBY ORDERED that:

(a)  The requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(3)

     are met;

(b)  The 2002-2007 Subclass is therefore certified, ECBA confirmed as class

     counsel, and Foster Thomas, Kenneth Williams, Alan Olson, Chareama Bolds,

     Julio Phitts, David Sanchez, and Arthur Wallace are appointed as class

     representatives of the 2002-2007 Subclass;

(c)  The Damages Settlement meets the requirements of Fed. R. Civ. P. 23(e)

     because it is procedurally and substantively fair, reasonable, and adequate;

(d)  The factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463

     (2d Cir. 1974), except the ability of defendants to withstand a greater

     judgment, weigh in favor of approval of the Damages Settlement;

(e)  The $8,000 service awards to the 8 Named Plaintiffs, totaling $64,000, from

     the Settlement Costs are fair and reasonable given the time and effort they

     expended assisting in the prosecution of this litigation;

(f)  The $20,000 payments to the two GYN Plaintiffs, totaling $40,000, from the

     Settlement Costs are fair and reasonable;

(g)  Paying the Award Amount to the 18 Post-2007 Persons is fair and reasonable;

(h)  The factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47,

     50 (2d Cir. 2000), weigh in favor of approving the attorneys' fee award of

     $3,246,823 (in addition to the $802,308.12 previously received), and a

     lodestar cross check further confirms that the award is fair and reasonable;

(i) Class Counsel's expenses of $146,677 were reasonable out-of-pocket expenses which ordinarily would be charged to clients and which were incidental and necessary to the representation;

(j) Notice to the Settlement Class was the best practicable notice under the circumstances and complied with Fed. R. Civ. P. 23(c)(2);

(k) The Damages Settlement is therefore finally approved;

(l) Pursuant to Paragraph 36 of the Settlement Stipulation, the City is required to pay the Administrator within 31 days of the date of this order $29 Million, less deductions due to valid timely claimants' child support liens (hereinafter the amount to be paid to the Administrator is called the "Remainder"), and those amounts deducted for child support liens shall be sent to the beneficiary of the child support lien;

(m)Prior to the payment of the Remainder to the Administrator, the City in consultation with the Administrator, shall make its best good faith estimate of the maximum amount that should be deducted due to child support liens, and shall pay the Administrator $29 Million less that amount;

(n) If additional money is determined to be owed to the City due to child support liens due to a change in the Award Amount, acceptance of late claims, or for any other reason, the Administrator shall return that amount to the City;

(o) If less money is determined to be owed due for child support liens due to a change in the Award Amount, or for any other reason, the City shall pay the Administrator that additional money and that amount shall be added to the Remainder;

(p) The Administrator shall distribute the Remainder to timely valid claimants in
accordance with the terms of the Damages Settlement;

(q) Within 31 days of the date of this order, the City shall pay Class Counsel
$3,735,000, which is $4 Million less the $265,000 previously paid to the
Administrator;

(r) From this $3,735,000, Class Counsel shall pay: (1) the Administrator $37,500
for its expenses; (2) the Administrator $200,000 to be put in reserve to pay
late claims filed on or before December 15, 2010 for "good cause" shown; (3)
the eight Named Plaintiffs $8,000 each, for a total of $64,000; (4) the two
GYN Plaintiffs $20,000 each, for a total of $40,000; (5) themselves $146,677
for expenses; and (6) themselves $3,246,823 for attorneys' fees;

(s) All future expenses and costs incurred by Class Counsel shall be paid by Class
Counsel from their own funds;

(t) All future administrative expenses and costs, if any, incurred by the
Administrator shall first be paid from the $200,000 held in reserve to pay late
claims, and in the unlikely event those administrative expenses exceed
$200,000, by Class Counsel;

(u) Within 91 days of the date of this order, the City shall pay the Post-2007
Persons the Award Amount; and

(v) All checks mailed to Class Members shall bear the notation, "CASH
PROMPTLY, VOID AND WILL NOT BE RE-ISSUED 120 DAYS AFTER
DATE OF ISSUANCE;"

8

(w) Claims postmarked after the court-ordered deadline of September 11, 2010,

shall be denied as late and shall not be paid as part of the initial distribution

from the Class Fund. Persons who submit late claims on or before December

15, 2010 will be given 30 days to provide a "good cause" explanation for their

late filing. Class Counsel shall determine if the person had "good cause" to

file a late claim, and persons shall have the right to appeal any such

determination to the Magistrate Judge. All persons with good cause for filing

a late claim on or before December 15, 2010 shall be paid a pro-rata share –

up to the Award Amount – of the amount remaining in the Class Fund due to

the failure of claimants to timely cash their checks within 120 days of

issuance, as well as from the $200,000 held in reserve to pay late claims,

except that Class Counsel, upon notice to the Court, may decide to reserve

some portion of the remaining funds to pay persons who failed to cash their

checks within 120 days for "good cause" shown;

(x) All late claims which are approved as showing "good cause" will also be

subject to the deduction of any valid child support liens;

(y) Claims postmarked after December 15, 2010 shall be denied and shall not be

considered; and

9

    (z) If money remains in the Class Fund or in the $200,000 reserve after the

payment of late claims filed on or before December 15, 2010 for "good

cause," the parties shall confer and seek an order from the Court as to how to

distribute same.

Dated: New York, New York  
      October 21, 2010

SO ORDERED:

HONORABLE JOHN G. KOELTL  
UNITED STATES DISTRICT JUDGE

10

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
KADIAN MCBEAN, et al.,

                   Plaintiffs,           02 Civ. 05426 (JGK) (THK)

               -against-

THE CITY OF NEW YORK, et al.,
                   Defendants.
------------------------------------------------------------------------x
JOEL RAMOS, et al.,

                   Intervenor-Plaintiffs,

               -against-

THE CITY OF NEW YORK, et al.,
                   Defendants.
------------------------------------------------------------------------x

## STIPULATION OF SETTLEMENT

        This Stipulation and Order is made and entered into on this __ day of March

2010, between the City of New York (hereinafter "the City") and Intervenor-Plaintiffs

(hereinafter "Plaintiffs") Foster Thomas, Daniel Velazquez, Kenneth Williams, Alan Olson,

Arthur Wallace, Julio Phitts, Chareama Bolds, David Sanchez, and Doris Edwards

(collectively the "Parties"), and is made and entered into with reference to the following facts.

        WHEREAS, on July 15, 2002, a group of plaintiffs filed an action challenging

the New York City Department of Correction's ("DOC") policy of strip searching pre-trial

new admission detainees charged with misdemeanors and lesser offenses;

        WHEREAS, on February 18, 2004, Plaintiffs, through their counsel, Emery Celli

Brinckerhoff & Abady LLP, intervened, seeking injunctive relief and damages on a variety of

individual and class claims relating to strip search practices and individual and class claims for

forced gynecological exams;

WHEREAS the Parties, seeking to avoid additional protracted, expensive, and unnecessary litigation, agree to the entry of this Stipulation of Settlement (hereinafter "Stipulation") to resolve all issues that were raised in this class action by the Plaintiffs individually or as class representatives;

WHEREAS the Parties, seeking to avoid additional protracted, expensive, and unnecessary litigation, also agree to the entry of this Stipulation to resolve the claims of certain individuals who allege that they were strip searched in violation of the Injunction Settlement, as defined below in paragraph 24 ("Post-2007 Persons");

NOW, THEREFORE, with the agreement of all Parties, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

## DEFINITIONS

1.     The "Settlement Class" is defined as all pretrial detainees arraigned solely on non-felony charges:

    a.     who were admitted to DOC custody after arraignment between July 23, 2002 and October 4, 2007 but were not also simultaneously admitted on (i) any felony charges; (ii) a parole violation; (iii) an outstanding warrant for a felony offense; (iv) a violation of felony probation; (v) a City sentence of less than one year; or (vi) who were not already serving a State sentence at the time of their admission ("2002-2007 Subclass"); or,

    b.     who were admitted to DOC custody after arraignment between July 15, 1999, and July 22, 2002 on a Drug or Weapon Non-Felony Charge as defined in paragraph 23, but did not receive a monetary settlement as part of the 2005 Settlement, as

defined in paragraph 22, and were not also simultaneously admitted on (i) any felony charges; (ii) a parole violation; (iii) an outstanding warrant for a felony offense; (iv) a violation of felony probation; (v) a City sentence of less than one year; or (vi) who were not already serving a State sentence at the time of their admission ("1999-2002 Subclass").

2.     "Final Class List" means all of the persons in the Settlement Class, as determined by the Administrator after the Administrator performs an analysis to ensure that persons are not listed twice or incorrectly included. The Final Class List includes those persons who ultimately decide to Opt-Out of the Settlement Class. All individuals on the Final Class List will be given notice of this Stipulation.

3.     "Named Plaintiffs" means Foster Thomas, Daniel Velazquez, Kenneth Williams, Alan Olson, David Sanchez, Arthur Wallace, Chareama Bolds, and Julio Phitts. These persons represent all or part of the Settlement Class.

4.     "GYN Plaintiffs" means Chareama Bolds and Doris Edwards, both of whom asserted claims regarding purported forced gynecological examinations.

5.     "Former Class Representatives" means Joel Ramos, Samuel Figueroa, David Gonzalez, and Afifa Hudspeth. The Former Class Representatives are not "Named Plaintiffs" or "GYN Plaintiffs" and their claims were previously dismissed by this Court and/or they settled all of their claims as part of the 2005 Settlement.

6.     "Class Counsel" means Emery Celli Brinckerhoff & Abady LLP, 75 Rockefeller Plaza, 20th Floor, New York, New York 10019.

7.     A "Settlement Class Member" ("SCM") means any member of the Settlement

3

Class who does not file a valid and timely Request for Exclusion as provided in paragraph 58 of this Stipulation.

8.     An "Opt-Out" is any potential SCM who files a timely Request for Exclusion as specified in paragraph 61.

9.     The "Bar Date" is the date established by the Court by which any SCM who wishes to receive payments pursuant to the Stipulation must file his/her Claim Form(s).  The Parties agree that this date should be 120 days from when the Administrator first mails the Claim Packets to the persons on the Final Class List.

10.     The "Claim Form" is a document, in a form approved by the Court, that SCMs must complete and sign in order to be considered for payment pursuant to this Stipulation.

11.     A "Claim Packet" means a "Claim Form," together with a notice in a form approved by the Court.  The Claim Packet will be mailed by the Administrator to all persons on the Final Class List.

12.     "Summary Notices" means a one-page English and a one-page Spanish summary of this Stipulation in a form approved by the Court.

13.     "Administrator" means the person or organization designated by Class Counsel and appointed by the Court to administer the Class Fund, disseminate the Claim Packets, and review and determine the validity and amount of claims submitted by SCMs, according to the procedures set forth herein.

14.     "Class Fund" means the amount to be paid by the City for all claims of SCMs, service awards to Named Plaintiffs, payments to GYN Plaintiffs, administrative costs, and attorneys' fees and costs.  That amount shall be $33 Million, unless it is reduced pursuant to

4

paragraphs 32-34 because less than 10% of the persons on the Final Class List submit a Claim Form. The Class Fund does not include the amount paid to Post-2007 Persons.

15.    "Settlement Costs" means $4 Million of the Class Fund, which shall be paid directly to Class Counsel. From this amount, Class Counsel shall pay service awards to Named Plaintiffs, payments to GYN Plaintiffs, Administrator's costs, and Class Counsel's own past, present and future fees and costs. This amount does not include the attorneys' fees and costs previously paid to Class Counsel.

16.    The "Remainder" means that portion of the Class Fund that shall be paid to the Administrator to pay SCMs claims. That amount shall be $29 Million, unless it is reduced pursuant to paragraph 32-34 because less than 10% of the persons on the Final Class List submit a Claim Form, or the Court reduces the Settlement Costs. If the Court reduces the Settlement Costs, that reduction will be added to the Remainder.

17.    "Class Settlement Fund Account" ("CSFA") means a bank account to be established by the Administrator for the benefit of the Settlement Class. The CSFA shall be interest bearing if the costs associated with making it interest bearing (such as tax preparation and bank fees) are less than the likely interest earned. If the CSFA is an interest bearing account, any amount remaining after the costs described in this paragraph will be subject to the conditions of paragraph 73 herein.

18.    "Preliminary District Court Approval" means the date, following the submission of this Stipulation, executed, to the District Court by the Parties, but prior to a fairness hearing on this Stipulation, on which the District Court grants preliminary approval of the Stipulation.

19.    "Final District Court Approval" means the date, following the submission of this

Stipulation, executed, to the District Court by the Parties, and after a fairness hearing on this Stipulation, on which the District Court grants final approval of this Stipulation.

20.     The "Effective Date for Payment" is the date when the City's obligation to pay the Class Fund of $33 Million (minus sums advanced for costs of notice pursuant to paragraph 35) becomes effective.  It is one day following entry of the Final District Court Approval of the Stipulation by an Order from the District Court.

21.     "Released Parties" means any and all of the Defendants, namely the City, William J. Fraser, Gary M. Lanigan, Bernard B. Kerik, Robert N. Davoren, Martin F. Horn, Thomas R. Frieden, Prison Health Services, Inc., P.H.S. Medical Services P.C., Trevor Parks, and James Capoziello,[1] as well as their past or present affiliates, subsidiaries, parents, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, insurers and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, heirs, successors in interest or assigns of the Defendants.

22.     "2005 Settlement" means the court-approved settlement dated June 21, 2005 wherein the Court certified the class as: "pre-trial detainees who, during the class period [July 15, 1999 through July 22, 2002], were arraigned on certain misdemeanors, violations, and misdemeanor charges of civil contempt, and non-felony warrants regarding same, and who, after arraignment, were strip-searched in DOC jails pursuant to the standard new admission strip search procedure."  The 2005 Settlement provided that each class member would receive $750 if they claim to have been strip searched once during that class period and $1000 if they claim to

---

[1] By Stipulation and Order dated August 29, 2007, the Parties agreed to the dismissal with prejudice of all claims against defendants Michael M. Bloomberg, Mayor of the City of New York, the New York City Department of Health and Mental Hygiene, and the New York City Department of Correction.

have been strip searched two or more times during that class period. Excluded from the 2005

Settlement class were pre-trial detainees who, at the time they were admitted to one of DOC's new

admission facilities, were charged with a Drug or Weapon Non-Felony Charge as defined in the

paragraph below.

23.    "Drug or Weapon Non-Felony Charge" means the following drug and weapons-

related offenses: N.Y. Penal Law Sections: (a) § 220.03 Criminal Possession of a Controlled

Substance in the Seventh Degree, a class A misdemeanor; (b) § 220.45, Criminal Possession of a

Hypodermic Instrument, a class A misdemeanor; (c) § 220.50, Criminal Possession of Drug

Paraphernalia in the Second Degree, a class A misdemeanor; (d) § 221.05, Unlawful Possession

of Marijuana, a violation; (e) § 221.10, Criminal Possession of Marijuana in the Fifth Degree, a

class B misdemeanor; (f) § 221.15, Criminal Possession of Marijuana in the Fourth Degree, a

class A misdemeanor; (g) § 221.35, Criminal Sale of Marijuana in the Fifth Degree, a class B

misdemeanor; (h) § 221.40, Criminal Sale of Marijuana in the Fourth Degree, a class A

misdemeanor; (i) § 265.01, Criminal Possession of a Weapon in the Fourth Degree, a class A

misdemeanor; and (j) § 265.06, Unlawful Possession of a Weapon upon School Grounds, a

violation. Also excluded from the class were those who were charged pursuant to the following

New York City Administrative Code Sections: (a) § 10-131, Firearms; (b) § 10-133, Possession

of Knives or Instruments; and (c) § 10-134, Prohibition on Sale of Certain Knives; and those

who were charged pursuant to Vehicle and Traffic Law § 1192(4), Operating a Motor Vehicle

while impaired by a drug.

24.    "Injunction Settlement" means the Stipulation and Order, signed by the Parties on

October 4, 2007 and preliminarily approved by the District Court on October 5, 2007 and finally

approved by the District Court at a fairness hearing on February 5, 2010 and by an Order dated

7

February 12, 2010.

25.    "Post-2007 Persons" means the following persons who have alleged that, after

October 4, 2007, he or she was strip searched in violation of the Injunction Settlement and whose

claims are being resolved as part of this settlement: John Able, Michael Booker, Chester Brown,

Marquis Copeland, David Cruz, Harold Eggleston, Osvaldo Gomez, Michael Gruich, Naquawn

Hallback, Susan Longton, Lacy Love, Saeed Mack, Henry Maxwell, Terrence Medlock, Harold

Nance, Tyrone Reynolds, Dennis Ryan, and Yunepha Sumpter.  The settlement amount for these

claims is not part of the Class Fund.

26.    "Settled Class Claims" mean any and all claims, debts, demands, rights, or causes

of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest,

attorneys' fees, administration fees, expert or consulting fees, and any other costs, expenses, or

liabilities whatsoever), whether based on federal, state, local, statutory, or common law or any

other law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or

un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature,

that arise out of strip searches of non-felon pre-trial detainees at DOC jails during the initial new

admission process from July 15, 1999 until and including October 4, 2007.

27.    "Settled Named Plaintiff Claims" mean any and all claims, debts, demands, rights,

or causes of action or liabilities whatsoever (including, but not limited to, any claims for

damages, interest, attorneys' fees, administration fees, expert or consulting fees, and any other

costs, expenses, or liabilities whatsoever), whether based on federal, state, local, statutory, or

common law or any other law, rule, or regulation, whether fixed or contingent, accrued or un-

accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or

individual in nature, (i) that have been asserted in this action by the Settlement Class, Former

Class Representatives, GYN Plaintiffs, and/or Named Plaintiffs against any of the Released Parties, or (ii) that arise out of strip searches or gynecological exams at DOC from July 15, 1999 until and including October 4, 2007 and could have been asserted in any forum by the Settlement Class, Former Class Representatives, Named Plaintiffs, GYN Plaintiffs, or any of them against any of the Released Parties.

28.    "Settled Post-2007 Claims" mean any and all claims, debts, demands, rights, or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, administration fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature that arise out of alleged strip searches of non-felon pre-trial detainees at DOC jails during the initial new admission process from October 5, 2007 until the date this Stipulation is signed by the Parties.

**CLASS CERTIFICATION**

29.    By an Opinion and Order dated August 14, 2009, the District Court certified the 1999 to 2002 Subclass as defined in paragraph 1(b).

30.    As part of the Injunction Settlement, the Parties agreed to the certification of two classes pursuant to Fed. R. Civ. P. 23(b)(3), which together comprise the 2002 to 2007 Subclass that is defined in paragraph 1(a). As part of the Injunction Settlement, the Parties also agreed to the certification of an Admission Injunction Class pursuant to Fed. R. Civ. P. 23(b)(2). The District Court preliminarily approved the certification of these classes on October 5, 2007. The District Court finally approved certification of the injunctive class pursuant to Fed. R. Civ. P

9

23(b)(2) class after a fairness hearing on the Injunction Settlement on February 5, 2010. Certification of the Fed. R. Civ. P 23(b)(3) classes that comprise the 2002 to 2007 Subclass was not at issue at the fairness hearing on the Injunction Settlement, and that certification has not been finally approved.

31.     The Parties reaffirm their agreement, subject to the District Court's final approval, to certify the 2002 to 2007 Subclass pursuant to Fed. R. Civ. P. 23(b)(3) and will seek such certification at the fairness hearing on this Stipulation.

## FUNDING AND RESOLUTION OF CLAIMS FOR DAMAGES

32.     Subject to the terms and conditions of this Stipulation, the City agrees to pay Thirty-Three Million Dollars ($33,000,000.00) which shall be used to pay all claims of SCMs, service awards to Named Plaintiffs, payments to GYN Plaintiffs, administrative costs, and past, present, and future attorneys' fees and costs.  The $33 Million shall be reduced pursuant to paragraphs 33 and 34, if less than 10% of the persons on the Final Class List submit valid Claim Forms.  The total amount less any reductions pursuant to paragraphs 33 and 34 is the Class Fund. The Class Fund does not include the $802,308.51 in attorneys' fees and costs previously paid to Class Counsel pursuant to the Injunction Settlement.  The Class Fund also does not include the additional individual payments that will be made to "Post-2007 Persons," as set forth in paragraph 41.

33.     If less than 10% of the persons on the Final Class List submit valid Claim Forms, the $33 Million shall be reduced as follows:  After subtracting the Settlement Costs awarded from the $33 Million, the Remainder ("Remainder") shall be divided by one-tenth of the number of SCMs on the Final Class List, which amount shall constitute the "Paragraph 33 Award Amount."  The Paragraph 33 Award Amount should then be multiplied by the number of SCMs

10

on the Final Class List who constitute the difference between (i) 10% of the Final Class List and (ii) the amount equal to the number of SCMs who submitted Claim Forms.  The resulting amount will be refunded to the City.

34.    For example, if 100,000 individuals are on the Final Class List and $4,000,000 is paid to cover the Settlement Costs, and only 9,000 SCMs submit Claim Forms, then the amount is calculated as follows: The Remainder is $29,000,000.  $29,0000/10,000 = $2,900. $2,900 (10,000 – 9,000) = $2,900,000.  In this example, the Class Fund would be reduced by $2,900,000 and the maximum award an SCM shall receive would be $2,900.  This $2,900,000 would be refunded to the City.

35.    Within two weeks after Preliminary District Court Approval, the City shall deposit or cause to be deposited into a bank account designated by the Administrator by wire transfer an amount of same–day-available funds equal to the amount approved by the District Court for payment to the Class Administrator to cover the costs of notice agreed to by the Parties and/or ordered by the Court, and will provide additional funds to the Administrator as approved by the Court, except that the total of said funds shall not exceed $600,000.  Any such payment shall be debited against the Settlement Costs.  If the Stipulation is not ultimately approved by the Court, then all such funds paid to the Administrator, to the extent they are available after payment of all accrued class administration expenses, shall be returned to the City.  The Administrator will submit monthly bills to the Parties and may pay itself from these funds in accordance with its bill if the Parties do not object to the bill within 30 days of receipt of the monthly bill.

36.    Subject to the terms and conditions of this Stipulation and the approval of the Court, within thirty (30) calendar days of the Effective Date for Payment, the City shall deposit or cause to be deposited into the Class Settlement Fund Account ("CSFA") the Class Fund (a) less

the Settlement Costs, and (b) less deductions due to child support liens as provided for in paragraphs 43(c) and 57. Within thirty (30) calendar days of the Effective Date for Payment, the City shall deposit by wire transfer to the trust account of Class Counsel the Settlement Costs less the amount already advanced under the terms of the immediately proceeding paragraph.

37.    In the event that this Stipulation receives Final District Court Approval, but the funds are not immediately paid due to an appeal by a third party (see definition of "Effective Date for Payment"), the City will place the Class Fund in an interest bearing escrow account, and the interest accrued shall be added to the Class Fund for the benefit of the Class in the event that the Stipulation is finally approved and entered as a judgment. Should the settlement not be finally approved after exhaustion of all appellate avenues, all such funds, including interest earned on them, shall be returned to the City (except for class administration costs already expended by the Administrator). Should the settlement not be finally approved, or if for any other reason there is a delay in immediate payment by the City, the City shall have no claim for the funds advanced to the Administrator for notices against the Named Plaintiffs, the GYN Plaintiffs, the Post-2007 Persons, the Settlement Class, Class Counsel, or the Administrator for reimbursement of the advanced funds, except that any advance funds shall be credited towards any subsequent settlement in this action.

38.    The City will join Class Counsel in seeking the Court's approval of the Stipulation, including approval of the Settlement Costs.

39.    No payment shall be made to eligible SCMs before the Effective Date for Payment. Claims will be processed between the date of Preliminarily District Court Approval and the Effective Date for Payment. Upon the Effective Date for Payment, processed claims may be paid.

40.     No additional payments shall be paid to Class Counsel for fees and costs before the Effective Date for Payment.  After the City deposits or wires Class Counsel the Settlement Costs, as set forth in paragraph 36, Class Counsel may immediately withdraw money from the Settlement Costs to pay its own fees and costs before a final accounting, as long as sufficient money is reserved to pay the Administrator's costs, GYN Plaintiffs' payments, and service awards to Named Plaintiffs.  If the Administrator's final bill is less than the amount previously advanced, the Administrator shall refund to Class Counsel the remainder.  A copy of the Administrator's final accounting, as well as monthly bills, shall be provided to the City.

41.     Within ninety (90) days of the Effective Date for Payment, the City will pay Post-2007 Persons the same Award Amount, as defined in paragraph 42, that SCMs who submit Claim Forms are paid.  Such amounts shall be paid from funds other than the Class Fund.  If Post-2007 Persons are members of the Settlement Class and submit a valid Claim Form by the Bar Date, they may also recover the Award Amount from the Class Fund.  That is, Post-2007 Persons may receive the Award Amount twice if they are also eligible SCMs who submit timely valid Claim Forms.

## PAYMENTS TO THE SETTLEMENT CLASS

42.     The amount awarded to SCMs who submit Claim Forms shall be calculated as follows:

a.      First, the amount paid to the Administrator for costs; to Class Counsel for attorneys' fees and costs; to Named Plaintiffs for service awards; and to GYN Plaintiffs (collectively "Settlement Costs") shall be subtracted from the Class Fund.  This amount shall be $4 million unless otherwise reduced or altered by the Court.

13

b.   Second, the amount of money previously paid pursuant to the 2005 Settlement to SCMs who submit Claim Forms pursuant to this Stipulation shall be added to the remaining amount of the Class Fund for calculation purposes.  This added amount does not increase the Class Fund but is included for calculation purposes only.

c.   This amount shall then be divided by the number of SCMs who submit valid Claim Forms.

d.   The resulting amount of (c) shall be the "Award Amount."

43.   SCMs who timely file a completed and signed Claim Form and who are eligible for an award shall each be entitled to receive this Award Amount from the Class Fund in compensation for their claims, subject to the following provisions:

a.   In addition to the Award Amount, the Named Plaintiffs in this action shall receive additional service awards as set forth in paragraph 63 below; and the GYN Plaintiffs shall receive payments as set forth below in paragraph 64 below.  The additional amounts referred to in this sub-paragraph shall be paid from the Settlement Costs.

b.   If a SCM was paid as part of the 2005 Settlement, the previous settlement amount shall be deducted from the Award Amount, so that all SCMs shall be given an equal amount for any new admission strip search claim between July 15, 1999 and October 4, 2007.

c.   If an SCM who submitted a Claim Form has a New York child support lien, the amount of that lien shall be deducted from the amount the Administrator pays him

14

or her, pursuant to the provisions in paragraph 57.  The amount paid by the
Administrator to these SCM's will be their share of the Remainder minus any
child support lien already deducted by the City.

44.     If the calculation of the Award Amount set forth in paragraph 42 above results in
an Award Amount of less than $1,800 and if more than 2000 individuals not on the Final Class
List are valid claimants within the Settlement Class, then the City agrees to add an additional
amount to the Class Fund above the agreed-upon $33 Million so that the valid claims by those
not on the Final Class List do not reduce the amount paid to those on the Final Class List below
$1,800.  This additional amount will be added to the Remainder and used solely towards
payments of the Award Amounts.

45.     Class Counsel has the discretion to void checks mailed to SCMs and not cashed
within 120 days of issuance.  Notice of this procedure will be provided at the time the checks are
issued.  Class Counsel, on written notice to the City and the Court, shall have the discretion to (a)
reissue the checks, or (b) add the amount of the voided checks back to the Class Fund to be
divided equally amongst eligible SCMs, or (c) issue checks to persons who make late claims for
good cause shown, or (d) seek an award by the Court consistent with *cy pres* principles.  If
permission is granted to make late claims for good cause shown, any amount due and owing
attributable to New York child support liens shall be deducted and forwarded to the City prior to
any payment to an SCM who submitted a late claim.

46.     The Administrator is permitted for good cause shown (including proper
documentation and proof of authority) to issue checks in the name of a person other than the
SCM.

## ADMINISTRATOR

47.     The Administrator's duties shall include administering the Class Fund, including but not limited to the following matters: (1) issuing notice, including information about the right to object or opt out of the settlement; (2) locating class members; (3) distributing Claim Packets to and receiving executed original Claim Forms of same from those on the Final Class List; (4) establishing and administering the Class Fund and upon conclusion of the process, closing the Fund; (5) paying all income taxes, if any, owed by the Class Fund; (6) determining eligibility for awards on the basis of information provided by counsel for the Parties and the SCMs, validating the claims, and providing the Parties a list of those persons found preliminarily eligible every 30 days; (7) calculating the amounts of awards; (8) issuing and mailing checks to eligible SCMs, and issuing and filing all required tax forms and statements; (9) developing procedures and responding to inquires from SCMs and Opt-Outs about this Stipulation and the procedures contained herein, including by the use of a toll-free number; (10) creating a database of SCMs who have filed timely and valid Claim Forms; (11) establishing a toll-free number, which will be included in the Claim Packet and on the Summary Notices; (12) creating a database of Opt-Outs; and (13) providing the Parties with monthly bills and a final accounting.

48.     The City agrees to facilitate the work of the Administrator by, among other things, obtaining and providing to the Administrator, information, data, documents, and records in the City's possession, which is relevant and appropriate to facilitate the administration of the Class Fund, to the extent such information is disclosable to the Administrator under federal, state and/or local laws.  Within forty-five (45) days of Preliminary District Court Approval of the Stipulation, the City will provide the Administrator with an Excel spread sheet containing the full names of all the SCMs, along with their aliases, Social Security Number, date of birth,

NYSID number, address at the time of the last admission that made them part of the Settlement

Class ("last relevant admission"), last relevant admission date, last relevant admission charge, and

last known address. To determine the SCM's last known address, the City shall check certain

databases to which it has access, including DOC records of more recent admissions, the New

York City Department of Probation records, Human Resource Administration records, and

Department of Homeless Services records. Where necessary and/or appropriate, the Parties shall

cooperatively seek appropriate court orders to obtain the addresses of SCMs. The City's

obligation regarding the information listed in this paragraph only extends to the extent SCMs

provided accurate and complete information.

49.     To the extent that the Administrator and/or Class Counsel receive inquires that

they cannot resolve, the Administrator and/or Class Counsel shall group such inquires and

submit them in writing to a designated person at the Office of Corporation Counsel on a

recurring basis, but not more often than a weekly basis. Results of the investigations will be

provided in writing.

50.     Information provided to Class Counsel and the Administrator pursuant to the prior

two paragraphs shall be confidential, and may not be disclosed to anyone except Class Counsel,

Defendants' Counsel, certain City agencies (including DOC, Department of Homeless Services,

Human Resources Administration, and the Comptroller's Office), the Administrator, or the Court

under seal. Class Counsel and the Administrator shall not disclose the confidential information

to any person not a member of their staff. To the extent Class Counsel or the Administrator seek

to disclose this information to any other person or entity, they must first seek Defendants'

Counsel's consent in writing. Defendants' Counsel shall not unreasonably withhold consent. In

addition, after consent is given, but before disclosing the confidential information to anyone else,

including, any agent, contractor, or expert, the Administrator or Class Counsel shall first have

such person or organization sign the confidentiality agreement attached hereto as Exhibit A.  A

signed copy of Exhibit A shall be provided to Defendants' Counsel by expedited transmission

immediately but no later than two business days after execution.  Class Counsel and the

Administrator shall take all reasonable steps to insure that the confidential information

concerning all proposed class members and SCMs, remain private and confidential.  In addition,

the information provided to Class Counsel and the Administrator regarding the proposed class

members and SCMs will not be used for any other purpose other than in this litigation and for the

administration of this Stipulation.  Similarly, the City will not use any information concerning

SCMs or proposed class members that is provided by the Administrator or Class Counsel for any

other purpose other than in this litigation and for the administration of this Stipulation, and the

City shall keep such information confidential.

51.     The Administrator will apply for a tax ID number, if necessary, and take all

necessary steps for the timely creation of the CSFA prior to the forty-fifth day from the Final

District Court Approval.

52.     The Administrator shall provide the City the Employer Identification Number for

the CSFA, and a completed W-9 Form and bank routing information for the trust fund account,

within 45 days of the Final District Court Approval.

53.     The Administrator will treat income taxes as the first priority for payment, and

therefore, shall, on a quarterly basis, set aside an amount sufficient to pay all income taxes, if

any, owed by the CSFA on interest earned to date. The Administrator shall pay all income taxes,

if any, on a quarterly basis.  The City Comptroller shall have the right to inspect and copy all tax

forms (and worksheets), and monthly bank statements of the CSFA.  The Administrator will

provide to Class Counsel, Defendants' Counsel, and the City Comptroller with a monthly

statement of expenses paid. The City will not be responsible for taxes, penalties, or interest

incurred on the Class Fund. The Administrator shall issue all required IRS forms.

54.    Within thirty (30) days of receiving the Final Class List, the Administrator shall

mail by first class mail, postage prepaid, to all persons on the Final Class List for whom an

address is available a copy of the Claim Packet.

55.    Subject to approval from the District Court, the Administrator and Class Counsel

shall be responsible for determining a plan to ensure that as many SCMs as reasonably possible

receive the Claim Packet and see the Summary Notices. A copy of the plan should be sent to

Defendants' Counsel.

56.    The SCM must submit a completed Claim Form to the Administrator by the Bar

Date unless such date is extended by order of the Court. The Administrator shall reject claims

that are untimely. A Claim Form is deemed submitted upon deposit in a postpaid properly

addressed wrapper, in a post office or official depository under the exclusive care and custody of

the U.S. Post Office, or when submitted for delivery by a commercial express carrier, or when

actually received by the Administrator, whichever date is earlier.

57.    Every thirty (30) days, after the Preliminary District Court Approval, the

Administrator shall provide the Parties a list of those persons who are preliminarily eligible so

that the City may on a rolling basis determine whether that person's Award Amount will need to

be reduced due to New York child support liens. The City will not exercise its right to reduce

the payments set forth in this Stipulation by exercising its right to recover any other amounts,

including but not limited to amounts due for unpaid City taxes including personal income tax,

real estate related taxes, unpaid parking tickets, unpaid Environmental Control Board fines, or

19

any medicaid costs correctly paid against bills from the New York City Health and Hospitals Corporation. No benefits currently received by SCMs may be terminated or reduced as a result of Award Amounts unless required by federal or state law or regulation. This does not constitute a waiver of any right to separately recoup overpayments or any amounts owed solely to federal or state governments if such is required by federal or state law or regulation. Within thirty (30) days of receiving the last list of those persons eligible to receive an Award Amount, the City shall provide the Administrator and Class Counsel with a list of those persons who have New York child support liens and the amount that shall be deducted from each persons' Award Amount to be forwarded to the beneficiary of the child support lien.  Prior to providing this list, the City shall send each person owing child support liens a notice describing that they owe these liens and information on how to file a challenge regarding the deduction of the child support liens from the Award Amount.  If the City later determines that the amount of the liens was incorrect, the City shall directly pay that person the over-deduction of the amount that was withheld from that person's Award Amount.

58.     Any SCM who fails to submit a Claim Form by the Bar Date or any court-mandated extension, shall be forever barred from receiving payments pursuant to the Stipulation. Such person shall be bound by all of the terms of the Stipulation, and the Judgment entered herein, including but not limited to the release of all Released Persons of all Settled Class Claims, as defined in paragraph 26.

59.     The Administrator shall mail letters and/or otherwise contact SCMs who by the Bar Date submit partially completed Claim Forms that are deficient to provide them up to thirty (30) additional days to validate their Claim Forms.  The absence of a social security number or other identifying information shall not be a basis for not issuing an award to a SCM if the

Administrator can otherwise confirm the identity of the SCM.

60.     Rights and claims hereunder shall survive the death of SCMs.  If a SCM who is eligible to receive monetary relief under this Stipulation is deceased, the amount payable to such deceased SCM shall be paid to the appropriate representative of his/her estate.  The representative of the estate shall provide proof of death and appropriate documentation to show that she/he is properly a representative of the estate.  If the Administrator determines, after reasonable opportunity has been given, that there is insufficient information or proof regarding the deceased person's estate to permit such payment, the deceased person's share shall be distributed in accordance with the terms set forth in paragraph 45 for the distribution of returned checks.

## EXCLUSION FROM THE SETTLEMENT CLASS

61.     Any potential SCM who wishes to be excluded from the Settlement Class must by the Bar Date mail a request to be excluded from the Settlement Class ("Request for Exclusion") to the Administrator.  Any Request for Exclusion must be in writing and state the name, date of birth, address, and telephone number (if any) of the person requesting exclusion and contain a clear statement communicating that such person elects to be excluded from the Settlement Class. Originals of all Requests for Exclusion shall be retained by the Administrator and until such originals are filed with the Court.  Named Plaintiffs will not request exclusion pursuant to this paragraph.  A list of all exclusions, as well as a copy of the written Requests for Exclusions sent to the Administrator, shall be provided to Class Counsel and Defendants' Counsel.

62.     Any SCM who does not timely file a Request for Exclusion shall conclusively be deemed to have become a SCM and to be bound by this Stipulation and by all subsequent proceedings, orders, and judgments herein.

## SERVICE AWARDS FOR NAMED PLAINTIFFS

63.     In addition to the Award Amount, each of the eight Named Plaintiffs will be paid an additional $8,000 each as an award for services provided to the class and for any inconvenience, pain, suffering, and other non-pecuniary loss experienced as a result of having been a named plaintiff in this action.  Class Counsel shall pay these service awards from the Settlement Costs.  The amount of the service awards was negotiated before it was agreed that the awards would be paid from the Settlement Costs.

## PAYMENTS TO GYN PLAINTIFFS

64.     The GYN Plaintiffs shall receive $20,000 each for their alleged injury, physical pain, and suffering arising out of purported forced gynecological exams.  Class Counsel shall pay the GYN Plaintiffs this amount from the Settlement Costs.  The amount of these awards was negotiated before it was agreed that the awards would be paid from the Settlement Costs.  If they are eligible SCMs and submit valid and timely Claim Forms, the GYN Plaintiffs will also receive an Award Amount from the Administrator out of the Remainder.

65.     While Plaintiffs initially asserted class claims arising out of forced gynecological exams, a class was never certified.  All putative class claims arising out of forced gynecological exams are hereby dismissed.  All claims by the GYN Plaintiffs arising out of forced gynecological exams from July 15, 1999 until and including October 4, 2007, are hereby dismissed with prejudice.

## ADDITIONAL NOTICE

66.     To augment the Administrator's efforts to ensure that as many persons as reasonably possible receive notice, the Parties will work cooperatively together to ensure that the Summary Notices are posted in places where SCMs are likely to see them.  The Administrator

will provide the Parties with the requested number of copies of the Summary Notices, and will email the Parties a pdf version of the Summary Notices.

67.     The City agrees to ensure that the Summary Notices are posted in the following locations within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later:

a.     *NYC Department of Correction*:  In the intake areas and law libraries of all of its facilities, in the DOC intake areas of the state court houses, and in each DOC housing area, where legal notices regularly appear.

b.     *Department of Homeless Services*:  In the entrance areas of all shelter intake areas and in all shelters run by the Department of Homeless Services, in areas where legal notices regularly appear.

c.     *New York State Department of Correctional Services*:  DOC will forward copies of the Summary Notices to NYS DOCS and request that NYS DOCS post the Summary Notices as extensively as reasonably possible, in locations where individuals incarcerated in their facilities are likely to see them.

d.     *New York City Department of Probation ("DOP")*:  DOC will forward copies of the Summary Notices to DOP and request that DOP post the Summary Notices as extensively as reasonably possible, in the adult supervision office for each borough in New York City in locations where individuals on probation are likely to see them.

68.     Within two weeks of the initial mailing of the Claim Packets and approval of the

23

Summary Notices, whichever date is later, Class Counsel will forward copies of the Summary Notices to the New York State Office of Court Administration and the New York State Division of Parole and request that they post the Summary Notices as extensively as reasonably possible, throughout offices and/or locations where arrestees, detainees or individuals on probation are likely to see them.

69.     Within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later, Class Counsel will mail a letter to the following public defender offices requesting that they post the Summary Notices: The Legal Aid Society (in each borough), The Bronx Defenders, New York County Defenders, Queens Law Association, Brooklyn Defenders, Neighborhood Defender Services, and Staten Island Legal Defense Services.

70.     Within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later, Class Counsel will mail a letter to the following non-profits requesting that they post the Summary Notices: Coalition for the Homeless, Osborne Association, East Harlem Life Plan, Phoenix House, GreenHope, Fortune Society, Center for Employment Opportunities, STRIVE, Doe Fund, Odyssey House, Jericho Project, Exodus Transitional Community, Bowery Residents Committee, Fifth Avenue Committee, Legal Action Center, Women's Prison Association, Palladia, and Center for Urban Community Services (CUCS).

71.     Summary Notices also may be placed by Class Counsel in locations comparable to those set forth in this section in an effort to give notice to as many SCMs as is reasonably practicable.

72.     Nothing in this section shall limit further appropriate efforts to provide notice.

## EXCESS FUNDS

73.     Any amount remaining in the Remainder shall be distributed to the Settlement Class.  If funds are not sufficient for distribution, then Class Counsel will petition the Court for an order consistent with *cy pres* principles.

## EFFECT OF STIPULATION

74.     Within five (5) business days of when the Class Fund (minus sums advanced for costs of notice) is paid to the Administrator and Class Counsel by the City, all claims in the above-referenced action will be dismissed, with prejudice, and without costs, expenses, or fees in excess of the amount authorized by paragraphs 15, 35 and 36 above.

75.     The Stipulation, as of the Effective Date for Payment, resolves in full all claims, with prejudice, against the Released Persons by SCMs, including the Named Plaintiffs arising out of any strip searches of non-felony pre-trial detainees at DOC jails during the initial new admission process from July 15, 1999 until and including October 4, 2007.  When the Stipulation is final, as of the Effective Date for Payment, all SCMs, including the Named Plaintiffs, hereby release all such claims.

76.     This Stipulation, as of the Effective Date for Payment, also resolves in full and with prejudice all claims by the GYN Plaintiffs for purported forced gynecological examination claims from July 23, 2002 until and including October 4, 2007.

77.     This Stipulation, as of the Effective Date for Payment, resolves in full and with prejudice all claims by the Post-2007 Persons for claims arising out of any purported strip searches of non-felony pre-trial detainees at DOC jails during the initial new admission process from October 5, 2007 until the date this Stipulation is signed by the Parties.

78.     This Stipulation contains all the terms and conditions agreed upon by the Parties,

25

and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein, except for the 2007 Injunction Settlement in this matter.

79.     As of the Effective Date for Payment, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency, or other tribunal, or to file any complaint with regard to acts of commission or omission by the Released Persons respecting Settled Class Claims.

80.     As of the Effective Date for Payment, the Post-2007 Persons hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency, or other tribunal, or to file any complaint with regard to acts of commission or omission by the Released Persons respecting Settled Post-2007 Claims.

81.     As of the Effective Date for Payment, the GYN Plaintiffs hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency, or other tribunal, or to file any complaint with regard to purported forced gynecological exams from July 15, 1999 until and including October 4, 2007.

82.     Each SCM shall be deemed to have submitted to the jurisdiction of the Court.

83.     No Opt-Out shall share in any monetary benefits provided by this Stipulation.

84.      The Parties will take all necessary and appropriate steps to obtain approval of the Stipulation and dismissal of the action with prejudice.  If the District Court approves this Stipulation, and if there is an appeal from such decision by a non-party, Defendants will join Class Counsel in defense of this Stipulation on any such appeal or subsequent proceeding.

85.     The Parties hereby agree not to appeal any aspect of this Stipulation, under any condition or circumstance, or to otherwise collaterally attack or challenge this Stipulation.

86.     The District Court shall retain jurisdiction over the Parties to enforce and administer the terms of this Stipulation and Order during the period it, or any of its provisions, remain in effect.

Date: March 16, 2010


EMERY CELLI BRINCKERHOFF &
ABADY LLP
*Counsel for Named Plaintiffs &
Class*
75 Rockefeller Plaza, 20th Floor
New York, New York 10019

By:_____
        Richard D. Emery

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Counsel for Defendants*
100 Church Street
New York, New York 10007

By:_____
        Muriel Goode-Trufant

SO ORDERED:

_____
U.S.D.J.

27

85.   The Parties hereby agree not to appeal any aspect of this Stipulation, under any condition or circumstance, or to otherwise collaterally attack or challenge this Stipulation.

86.   The District Court shall retain jurisdiction over the Parties to enforce and administer the terms of this Stipulation and Order during the period it, or any of its provisions, remain in effect.

Date: March 16, 2010

EMERY CELLI BRINCKERHOFF &
ABADY LLP
*Counsel for Named Plaintiffs &
Class*
75 Rockefeller Plaza, 20th Floor
New York, New York 10019

By: _____
        Richard D. Emery

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Counsel for Defendants*
100 Church Street
New York, New York 10007

By: _____
        Muriel Goode-Trufant

SO ORDERED:

_____
U.S.D.J.

27

**EXHIBIT A**

The undersigned hereby acknowledges that I have read paragraphs 48-50 of the Stipulation of Settlement, dated March 16, 2010, in *McBean v. City of New York*, 02 Civ. 05426 (S.D.N.Y) and *Joel Ramos v. City of New York*, and understands that the information provided to me pursuant to this settlement is confidential, and may not be disclosed to any other person or entity except Class Counsel, Defendants' Counsel, the Administrator, or the Court under seal.  The undersigned agrees not to use this confidential information for any purpose other than in connection with the administration of this settlement in this lawsuit, and will not disclose any of the confidential information in any form to any other person or entity except Class Counsel, Defendants' Counsel, the Administrator, or the Court under seal.

_____          _____
Date                                                      Signature

_____
Print Name

_____
Occupation